# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**UNITED STATES OF AMERICA,**

                    **Plaintiff,**
                                                **Case No. 3:09-cr-121**

                                                **Judge Thomas M. Rose**

**-v-**

**SHAWN M LAUDERDALE,**

                    **Defendant.**
_____

### ENTRY AND ORDER OVERRULING LAUDERDALE'S MOTIONS TO SUPPRESS
### (Doc. #22 and #23)
_____

Defendant Shawn M. Lauderdale ("Lauderdale") has been indicted on four Counts. (Doc. # 9.) Count I is for possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and (b)(1)(C). Count II is for possession of a firearm in relation to a drug trafficking crime in violation of 21 U.S.C. § 924(c)(1)(A). Count III is for possession of marijuana and heroin in violation of 21 U.S.C. § 844(a). Count IV is for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The trial of this matter is set for June 21, 2010.

Now before the Court is Lauderdale's Motion To Suppress (doc. #22) and Amended Motion To Suppress (doc. #23). A hearing was conducted on February 16, 2010, and on March 23, 2010. Following the Hearing, Lauderdale filed his Memorandum In Support (doc. #30), the Government responded in opposition (doc. #32) and Lauderdale replied (doc. #35). Thus, Lauderdale's Motion To Suppress and Amended Motion To Suppress are now ripe for decision.

Findings of relevant facts will first be set forth. This will be followed by the relevant legal provisions and an analysis of Lauderdale's Motion and Amended Motion To Suppress.

## FINDINGS OF RELEVANT FACTS

On the morning of July 10, 2009, Dayton Police Officers William Gross ("Officer Gross") and Dave Blackburn ("Officer Blackburn") responded to Lauderdale's Dayton, Ohio residence at 1027 Burleigh Avenue in response to a request for peace officer assistance. (2/13/10 Hearing Transcript ("2/13/10 Tr.") at 3-4, 9.) The request for peace officer assistance was made by Hazel "Nicky" Rogers ("Rogers"). (Id. 9-10.)

Peace officer assistance calls are calls for police presence usually due to a domestic dispute. (Id. 6.) A peace officer assistance call is made where one party feels that they want the police present because they are afraid something could happen while they are removing items from a location. (Id.)

Officer Gross and Officer Blackburn obtained information about Rogers' peace officer call from a report that they received from their cruiser's mobile computing equipment. (Id. 6-7.) This type of computer report provides officers with a brief summary of the details of the originating telephone request for assistance. (Id. 9-10.) In this case, the report indicated the caller's name, location and that the caller, Rogers, was in need of assistance retrieving her property. (Id.)

The report in this case does not indicate that Rogers is calling for a domestic violence situation. (Id. 59.) It does, however, indicate that Rogers wants the police to stand by while she gets her personal property. (Id.)

Officers Gross and Blackburn had previously responded to peace officer calls hundreds of times between them as part of their regular duties. (Id. 4, 89, 91-92.) These officers knew that peace officer calls typically involve some type of domestic dispute, particularly when a residence

is involved. (Id. 60, 78, 113.)

Police protocol requires police officers to respond and to make face-to-face contact with the person who sought the police assistance. (Id. 8, 78, 93, 123.)  In some instances, the person who made the peace officer call tells the police officer that everything is okay. (Id. 8.) In other instances, police officers encounter a situation where the dispute escalates and might become something more serious without the presence of the police officers. (Id. 92.)

Peace officer calls are inherently unpredictable. (Id. 110.) They are approached in a manner that insures the safety of the officers, the caller and others present. (Id. 65, 92-93, 110.) This manner includes making a face-to-face contact with the caller. (Id.)

When Officers Gross and Blackburn arrived at 1027 Burleigh Avenue, they exited their cruiser and observed a car parked in the driveway but there was no one present outside of the one-story residence. (Id. 11-13.) They then proceeded to the front door of the residence where they observed a surveillance camera positioned in the corner of the covered front porch with the camera angled toward the front door. (Id. 11-14.)

They were met at the door by Lauderdale. (Id. 13.) Six-foot-four Lauderdale identified himself as the owner of the residence. (Id. 72.) For officer safety, Officer Blackburn remained at the base of the porch stairs as Officer Gross approached the door which Lauderdale had partially opened. (Id. 14, 17.) When Lauderdale opened the door, both Officers immediately noticed a strong odor of marijuana coming from inside the house. (Id. 17, 98.) .

Officer Gross explained to Lauderdale that he and Officer Blackburn had received a peace officer call at this address. (Id.18.) Lauderdale responded that "she" was okay and was inside "getting her stuff." (Id.) Lauderdale also called for Rogers several times. (Id. 18-20.)

Rogers did not respond. (Id. 20.)

Officer Gross explained to Lauderdale that he needed to speak with Rogers to ascertain that she was okay. (Id. 19.) Lauderdale responded that Officer Gross was not coming into his residence. (Id. 19.) After "30 or 40" seconds and not hearing from Rogers, Officer Gross told Lauderdale that he was coming inside the residence and entered the residence. (Id. 20.)

Officer Gross then entered the residence into the living area. (Id. 20.) He immediately observed a small amount of marijuana laying in plain view on top of a coffee table in the living area. (Id. 22.) In the meantime, Officer Blackburn positioned himself just inside the front entry where he could maintain visual contact with Lauderdale. (Id. 25-26.)

Once Officer Gross was inside the residence, Lauderdale called for Rogers two more times. (Id. 26-27.) About "30 or 40" seconds later, Rogers approached the living area from a hallway. (Id. 84.) Rogers did not appear to Officer Gross to be harmed in any way. (Id. 28.) According to Officer Gross, Rogers had no apparent injuries, did not seem to be upset and had no redness in her eyes. (Id. 28.)

After ascertaining that Rogers was okay, Officer Gross asked Lauderdale about the marijuana on the coffee table. (Id. 28.) Lauderdale responded that the marijuana on the coffee table was for his own personal use and then instructed Rogers to escort Officer Gross to the kitchen where the rest of his personal-use marijuana was located. (Id. 29.) The marijuana found on the coffee table and in the kitchen did not seem to Officer Gross to be consistent with the strong marijuana odor emanating from the residence. (Id. 33-34.)

After Officer Gross found the marijuana in the kitchen, he discovered what appeared to be cocaine residue and crack cocaine. (Id. 34.) The alleged cocaine residue and crack cocaine

-4-

was underneath the cabinet where he had found the marijuana. (Id. 34.) He also found a razor blade and a digital scale with a business card on top of it. (Id. 33-36.) The razor blade and scale appeared to have cocaine residue on them. (Id.)

At that time, Officer Gross decided to conduct a "nuisance investigation." (Id. 36.) When an officer finds felony drugs, the nuisance investigation may result in "boarding up" the house for 365 days. (Id. 37.) Officer Blackburn secured Lauderdale and detained him in the police cruiser. (Id. 38-39, 104.) Rogers was escorted to the porch until an additional officer came to the scene to secure her. (Id.)

A search warrant was later obtained and the residence was searched. (Id. 124-26.) Inside a locked hallway closet, police discovered marijuana residue, distribution quantities of heroin and crack cocaine, two loaded firearms and other items of evidentiary value. (Id. 132-38.) This presumably led to Lauderdale's indictment and the subsequent Motion To Suppress and Amended Motion To Suppress.

### RELEVANT LEGAL PROVISIONS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." *United States v. McClain*, 444 F.3d 556, 561 (6th Cir. 2005)(quoting U.S. Const. amend. IV). Thus, a search warrant must be obtained before a home may be searched. *Michigan v. Fisher*, 130 S. Ct. 546, 548 (2009). Therefore, searches and seizures inside a home without a warrant are presumptively unreasonable. *Id.*

The police may not enter a private residence without a warrant unless both probable cause and exigent circumstances exist. *McClain*, 444 F.3d at 561(citing *Kirk v. Louisiana*, 536

U.S. 635, 638 (2002)). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.*(quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993).

The Sixth Circuit has recognized four general categories of exigent circumstances that satisfy the exception to the warrant requirement. *United States v. Adams*, 583 F.3d 457, 466 (6th Cir. 2009)(citing *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978)). The four categories are: (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; and (4) a risk of danger to the police or others. *Id.*(citing *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996)).

In this case, only the fourth category is implicated. Under the fourth category, termed the "risk of danger" exigency, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Fisher*, 130 S. Ct. at 548. However, the law enforcement officers must have an objectively reasonable basis for believing that an occupant is in need of immediate aid. *Id.* (citing *Mincey*, 437 U.S. at 393-94).

The "risk of danger" exigency has been most frequently applied in cases where the government actors were performing "community-caretaker" functions rather than traditional law-enforcement functions. *Ziegler v. Aukerman*, 512 F.3d 777, 787 (6th Cir. 2008). In reviewing whether the "risk of danger" exigency applies, courts consider the "totality of circumstances and the inherent necessities of the situation at the time." *Ziegler*, 512 F.3d at 787(citing *Rohrig*, 98 F.3d at 1511).

For example, courts have recognized the combustible nature of domestic disputes.

*Tierney v. Davidson*, 133 F.3d 189,197 (2d Cir. 1998). This type of call typically involves dangerous situations in which the possibility of physical harm or damage escalates rapidly. *Id.* Thus, courts have given great deference to a police officer's belief that one of the parties to a domestic dispute was in danger. *Id.* And, courts have determined that it may be a dereliction of duty for an officer to leave the premises without ensuring that any danger had passed, and that an officer could not tell that danger had passed unless he found the other participant in the dispute. *Id.* at 198.

## ANALYSIS

Lauderdale seeks to suppress any and all evidence obtained as a result of the search of his residence on July 10, 2009, by law enforcement officials, and further, to suppress any subsequent statements made to law enforcement officials as a result of this search. The United States, which has the burden, argues that it was objectively reasonable, given the totality of the circumstances in this case, for Officers Gross and Blackburn to enter Lauderdale's residence under the "risk of danger" exigent circumstance. Thus, Lauderdale's Motions turn on whether or not the warrantless entry by Officers Gross and Blackburn falls within the "risk of danger" exception to the warrant requirement.

The "risk-of-danger" exception to the requirement that a warrant be obtained before searching a home applies in this case. Officer's Gross and Blackburn were responding to a peace officer assistance call made by Rogers for assistance in gathering her belongings. In their experience, peace officer assistance calls typically involve domestic disputes which are inherently unpredictable. Further, police protocol dictates that police officers responding to this type of call make a face-to-face contact with the caller to assess any potential threat to the caller.

Upon arrival, Officers Gross and Blackburn were met at the door of the residence by Lauderdale. They explained to Lauderdale that they were responding to a peace officer call for assistance.

Lauderdale indicated that he was the owner of the residence, confirmed that Rogers was present and that she was gathering her belongings, and insisted that Rogers was okay. Further, there was no sign of violence. However, repeated calls for Rogers by Lauderdale yielded no response nor any movement from inside the residence.

Officers Gross and Blackburn indicated that they needed to check on Rogers' welfare themselves. Lauderdale responded that the Officers did not have permission to enter his residence. Rather than obtaining a warrant, the Officers then entered Lauderdale's residence, presumably to check on Rogers. It is this initial entry to which Lauderdale has objected.

Considering the totality of the circumstances, Officers Gross and Blackburn did not need a warrant to enter Lauderdale's home to check on Rogers since they had received no confirmation at the time that she was safe and uninjured. The Officers were obviously involved in a domestic situation which may typically involve violence and should not leave the area without ensuring that any possibility of danger had passed. The entry into Lauderdale's residence was objectively reasonable and falls within the "risk of danger" exigency.

## CONCLUSION

Lauderdale's Motion To Suppress (doc. #22) and Amended Motion To Suppress (doc. #23) are OVERRULED. The trial of this matter remains set to begin on June 21, 2010.

**DONE** and **ORDERED** in Dayton, Ohio this Ninth day of June, 2010.

-8-

**s/Thomas M. Rose**
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record